IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| WILLIE WATERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 316-076 |
| | ) | |
| GEORGIA DEPARTMENT OF | ) | |
| CORRECTIONS; WESLEY O'NEAL, | ) | |
| Correctional Unit Manager; FNU POSS, | ) | |
| Correctional Officer; FNU SCOTT, | ) | |
| Correctional Officer; FNU TAYLOR, | ) | |
| Correctional Officer; FNU LORDGE, | ) | |
| Correctional Officer; and JAMES MASON, | ) | |
| Correctional Officer, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate incarcerated at Hays State Prison in Trion, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983 concerning events that occurred at Johnson State Prison ("JSP"). Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

I.     **SCREENING OF THE COMPLAINT**

    A.     **BACKGROUND**

Plaintiff names the following Defendants: (1) Georgia Department of Corrections ("GDOC"); (2) Wesley O'Neal, Correctional Unit Manager; (3) Correctional Officer Poss; (4) Correctional Officer Scott; (5) Correctional Officer Taylor; (6) Correctional Officer Lordge; and (7) Correctional Officer James Mason. (Doc. no. 1, p. 4.) Defendant GDOC is sued in its official capacity, and Officers O'Neal, Poss, Scott, Taylor, Lordge and Mason are being sued in both individual and official capacities. (Id. at 6.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Plaintiff suffers from chronic instability of the left shoulder due to tendon and ligament damage, and has a history of recurring anterior dislocations, subluxation, and pains in the left shoulder. (Id. at 7.) The Georgia Department of Corrections ("GDOC") has issued Plaintiff a medical safety profile which requires all prison personnel to handcuff plaintiff with his hands in front. (Id.) If Plaintiff is not handcuffed with his hands in front, he risks recurring shoulder dislocations. (Id. at 9.) On October 28, 2015, Dr. James M. Seward evaluated Plaintiff and renewed Plaintiff's medical safety profile requiring that he be handcuffed from the front. (Id. at 8.) On October 29, 2015, Plaintiff's front cuff medical profile was posted on the GDOC state wide computer database. (Id. at 7.)

On December 8, 2015, Officer O'Neal examined Plaintiff's medical safety profile instructions which were posted outside Plaintiff's cell. (Id. at 10.) Officer O'Neal told Plaintiff he did not have "a valid front cuff profile," and Plaintiff expressed disagreement. (Id.) Without further discussion, Officer O'Neal marked out the medical safety profile

instructions requiring Plaintiff be handcuffed from the front, and wrote "do not handcuff in front." (Id.)

On December 9, 2015, Officers Poss and Scott came to Plaintiff's cell to escort Plaintiff to the showers. (Id. at 11.) Plaintiff told Officers Poss and Scott about his shoulder condition, advised them about his medical safety profile, and requested to be handcuffed in the front. (Id.) Officers Poss and Scott examined the medical safety profile instructions, told Plaintiff they were required to follow Officer O'Neal's instructions not to handcuff Plaintiff from the front, and ordered Plaintiff to turn around to be handcuffed. (Id. at 12.) Plaintiff complied and when the handcuffs were applied, Plaintiff felt pain in his entire left shoulder area. (Id.) After Plaintiff expressed his discomfort and pain, Officer Poss expressed his sympathy but told Plaintiff they were just following orders. After Plaintiff's shower, Officers Poss and Scott handcuffed Plaintiff from the rear again and escorted Plaintiff back to his cell. (Id. at 13.)

Officer Poss told Plaintiff he would speak with Officer O'Neal, and roughly thirty minutes later Officer O'Neal arrived for inspection. (Id. at 14.) When Officer O'Neal arrived, Plaintiff again explained his shoulder condition and advised Officer O'Neal about his medical safety profile and front cuff requirements. (Id.) In response, Officer O'Neal told Plaintiff to "get used to it." (Id. at 15.) When Plaintiff asked why Officer O'Neal had written "do not handcuff in front" on Plaintiff's medical safety profile, Officer O'Neal told him it was because he "was in charge." (Id.) Officer O'Neal then sarcastically offered Plaintiff Tylenol for his lingering pains. (Id.) Sometime later Plaintiff was issued a

"treatment card" from Dr. Seward instructing Plaintiff was to be handcuffed from the front. (Id. at 16.)

On December 11, 2015, Officers Taylor and Lordge came to Plaintiff's cell to escort him to the showers. After Plaintiff explained he needed to be cuffed from the front, he advised the officers to examine his medical safety profile. (Id. at 18.) Officers Taylor and Lordge read the medical safety instructions and the order from Officer O'Neal and told Plaintiff they were required to handcuff him from the rear. (Id.) After he was handcuffed, Officers Taylor and Lordge escorted Plaintiff to the showers. Plaintiff immediately felt pain in his left shoulder. (Id. at 19.) From December 12-13, 2015, Plaintiff experienced increased levels of pain in his left shoulder, and on December 13, 2015, Plaintiff submitted a sick call request seeking treatment for his shoulder pain. (Id. at 20.)

On December 14, 2015, Officer Poss escorted Plaintiff to the showers but handcuffed Plaintiff from the front. (Id. at 21.) Plaintiff did not experience shoulder discomfort. (Id.) On December 16, 2015, Officer Mason came to Plaintiff's cell and escorted him to the showers. (Id. at 22.) Plaintiff informed Officer Mason of his need to be handcuffed from the front but Officer Mason told Plaintiff he had no choice but to follow Officer O'Neal's orders and handcuff Plaintiff from the back. (Id. at 23.) After Plaintiff showered, Officer Mason reapplied the handcuffs and Plaintiff felt his left shoulder "pop and slip-out of socket." (Id. at 24.) Plaintiff requested emergency medical assistance and was taken to the emergency room at Fairview Park Hospital. (Id. at 25.)

At the Fairview Park Hospital, Plaintiff was admitted to the emergency treatment area, given an IV, and his shoulder was X-rayed, revealing dislocation. (Id.) Plaintiff was sedated and his left shoulder was relocated and secured in a shoulder immobilizing brace. (Id.) Plaintiff was discharged to the prison the same day and escorted back to his cell. (Id. at 26.) Plaintiff's pain has continued for more than ten months, and the shoulder still continues to cause severe pain and discomfort. (Id. at 28.) Plaintiff is now required to wear a shoulder immobilizer brace at all times except when showering. (Id.)

Plaintiff argues Defendants were deliberately indifferent to an excessive risk of serious harm to his health and safety and were deliberately indifferent to his serious medical needs in violation of his Eighth and Fourteenth Amendment rights. (Id. at 32-36.) Plaintiff also raises two negligence claims against Defendants, for failure to protect and for negligent medical care. (Id. at 37.) Finally, Plaintiff argues Defendants violated his rights under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act. (Id. at 39.) For relief, Plaintiff requests an injunction requiring Defendants to handcuff Plaintiff from the front and make reasonable accommodations for his disability. (Id. at 43.) Plaintiff also seeks compensatory, punitive, and special damages. (Id. at 43-44.)

## B. DISCUSSION

### 1. Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, of if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A

claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 327 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S.

519, 520 (1972); <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007). However, this liberal construction does not mean that the court has a duty to re-write the complaint. <u>Snow v. DirecTV, Inc.</u>, 450 F.3d 1314, 1320 (11th Cir. 2006).

  **2.**  **Plaintiff Fails to State Viable Eighth Amendment Claims Against Defendant GDOC.**

  In a companion Order, the Court allows Plaintiff to proceed with his Eighth Amendment deliberate indifference claims against Officers O'Neal, Poss, Scott, Taylor, Lordge and Mason. However, Plaintiff attempts to state deliberate indifference claims against Defendant GDOC, and these claims are barred by the Eleventh Amendment. (Doc. no. 1, pp. 32-33.)

  "The Eleventh Amendment insulates a state from suit brought by individuals in federal court, unless the state either consents to suit or waives its Eleventh Amendment immunity." <u>Stevens v. Gay</u>, 864 F.2d 113, 114 (11th Cir. 1989) (citing <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 98-100 (1984)). Arms or agencies of the state are also immune from suit. <u>Alabama v. Pugh</u>, 438 U.S. 781, 782 (1978) ("There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit."); <u>Stevens</u>, 864 F.2d at 115 (Eleventh Amendment bars suit against GDC); <u>Bailey v. Silberman</u>, 226 F. App'x 922, 924 (11th Cir. 2007) ("Neither a State nor its agencies may be sued as a named defendant in federal court absent the State's consent."); <u>Leonard v. Dep't of Corrs.</u>, 232 F. App'x 892, 894 (11th Cir. 2007) ("The Department of Corrections is not amenable to suit because it has immunity under the Eleventh Amendment.").

Because Defendant GDOC has Eleventh Amendment immunity, Plaintiff's Eighth Amendment claims against it should be dismissed.  See C.S. v. Thomas, No. 514CV01022AKKJEO, 2016 WL 2605531, at *4 (N.D. Ala. Apr. 8, 2016), report and recommendation adopted, No. 514CV01022AKKJEO, 2016 WL 1746015 (N.D. Ala. May 3, 2016) (dismissing claims against department of corrections based on Eleventh Amendment immunity, but allowing ADA and Rehabilitation Act claims).

### 3. Plaintiff's Negligence Claims Fail to State a Claim Under § 1983.

Plaintiff alleges Defendants were negligent for failing to protect him and for failing to provide adequate medical care to treat his medical needs. (Doc. no. 1, pp. 37-38.)  To establish a claim under 42 U.S.C. § 1983, Plaintiff must allege that he was deprived of a right secured under the Constitution or federal law, and that such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998).  However, "[s]ection 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." Baker v. McCollan, 443 U.S. 137, 146 (1979).  "An allegation that a defendant acted with mere negligence in causing a plaintiff injury is not sufficient to support a claim under 42 U.S.C. § 1983." Crawford v. Gordon, No. CV 6:09-077, 2010 WL 2942662, at *1 (S.D. Ga. June 25, 2010), report and recommendation adopted, No. CV 6:09-077, 2010 WL 2942660 (S.D. Ga. July 20, 2010) (citing Daniels v. Williams, 474 U.S. 327, 330–31(1986)).  "Section 1983 cannot be used to as a tool to bring a generalized negligence based tort suit in federal court." Ansley v. Franks, No. CV410-176, 2010 WL 4007626, at *1 (S.D. Ga. Aug. 30, 2010), report and

recommendation adopted, No. CV410-176, 2010 WL 4007611 (S.D. Ga. Oct. 12, 2010). Here, Plaintiff's state tort negligence claims are not actionable under § 1983 and should be dismissed.

### 4. Plaintiff's ADA and Rehabilitation Act Claims Against Officers O'Neal, Poss, Scott, Taylor, Lordge and Mason Should be Dismissed.

Title II of the ADA prohibits discrimination in services, programs, or activities of a "public entity" or "discrimination by any such entity." 43 U.S.C. § 12132. The ADA defines a "public entity" as:

> (A) any State or local government;
> (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and
> (C) the National Railroad Passenger Corporation, and any commuter authority.

Thus, "public entities" under Title II of the ADA includes state correctional facilities and entities. United States v. Georgia, 546 U.S. 151, 154 (2006). However, the above definition clearly does not include individuals. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1172 (11th Cir. 2003). "The ADA imposes *respondeat superior* liability on the employer for the discriminatory acts of its employees." Rylee v. Chapman, 316 F. App'x 901, 905 (11th Cir. 2009). "Both the ADA and the Rehabilitation Act do not provide for individual liability . . . ." Thomas, 2016 WL 2605531 at *4 (citing Badillo v. Thorpe, 158 F. App'x 208, 211 (11th Cir.2005)). Thus, Plaintiff fails to state claims under the ADA and Rehabilitation Act against Officers O'Neal, Poss, Scott, Taylor, Lordge, and Mason.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's Eighth Amendment Claims against Defendant GDOC, negligence claims for failure to protect and for negligent medical care against all Defendants, and ADA and Rehabilitation Act claims against Officers O'Neal, Poss, Scott, Taylor, Lordge, and Mason be **DISMISSED** for failure to state a claim.

SO REPORTED and RECOMMENDED this 17th day of March, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA