IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| WILLIE WATERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 316-076 |
| | ) | |
| GEORGIA DEPARTMENT OF | ) | |
| CORRECTIONS; WESLEY O'NEAL, | ) | |
| Correctional Unit Manager; FNU POSS, | ) | |
| Correctional Officer; FNU SCOTT, | ) | |
| Correctional Officer; FNU TAYLOR, | ) | |
| Correctional Officer; FNU LORDGE, | ) | |
| Correctional Officer; and JAMES MASON, | ) | |
| Correctional Officer, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**O R D E R**
_____

Plaintiff, an inmate incarcerated at Hays State Prison in Trion, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983 concerning events that occurred at Johnson State Prison ("JSP").[1] Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

---

[1] Plaintiff has also filed a motion for a preliminary injunction and a motion pursuant to Fed. R. Civ. P. 64. (Doc. nos. 9, 13.) The Court **ORDERS** Defendants to respond to any outstanding motions on or before the deadline of their first responsive pleading.

**I.     SCREENING OF THE COMPLAINT**

Plaintiff names the following Defendants: (1) Georgia Department of Corrections ("GDOC"); (2) Wesley O'Neal, Correctional Unit Manager; (3) Correctional Officer Poss; (4) Correctional Officer Scott; (5) Correctional Officer Taylor; (6) Correctional Officer Lordge; and (7) Correctional Officer James Mason. (Doc. no. 1, p. 4.) Defendant GDOC is sued in its official capacity, and Officers O'Neal, Poss, Scott, Taylor, Lordge, and Mason are being sued in both individual and official capacities. (Id. at 6.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Plaintiff suffers from chronic instability of the left shoulder due to tendon and ligament damage, and has a history of recurring anterior dislocations, subluxation, and pains in the left shoulder. (Id. at 7.) The Georgia Department of Corrections ("GDOC") has issued Plaintiff a medical safety profile which requires all prison personnel to handcuff plaintiff with his hands in front. (Id.) If Plaintiff is not handcuffed with his hands in front, he risks recurring shoulder dislocations. (Id. at 9.) On October 28, 2015, Dr. James M. Seward evaluated Plaintiff and renewed Plaintiff's medical safety profile requiring that he be handcuffed from the front. (Id. at 8.) On October 29, 2015, Plaintiff's front cuff medical profile was posted on the GDOC state wide computer database. (Id. at 7.)

On December 8, 2015, Officer O'Neal examined Plaintiff's medical safety profile instructions which were posted outside Plaintiff's cell. (Id. at 10.) Officer O'Neal told Plaintiff he did not have "a valid front cuff profile," and Plaintiff expressed disagreement. (Id.) Without further discussion, Officer O'Neal marked out the medical safety profile

2

instructions requiring Plaintiff be handcuffed from the front, and wrote "do not handcuff in front." (Id.)

On December 9, 2015, Officers Poss and Scott came to Plaintiff's cell to escort Plaintiff to the showers. (Id. at 11.) Plaintiff told Officers Poss and Scott about his shoulder condition, advised them about his medical safety profile, and requested to be handcuffed in the front. (Id.) Officers Poss and Scott examined the medical safety profile instructions, told Plaintiff they were required to follow Officer O'Neal's instructions not to handcuff Plaintiff from the front, and ordered Plaintiff to turn around to be handcuffed. (Id. at 12.) Plaintiff complied and when the handcuffs were applied, Plaintiff felt pain in his entire left shoulder area. (Id.) After Plaintiff expressed his discomfort and pain, Officer Poss expressed his sympathy but told Plaintiff they were just following orders. After Plaintiff's shower, Officers Poss and Scott handcuffed Plaintiff from the rear again and escorted Plaintiff back to his cell. (Id. at 13.)

Officer Poss told Plaintiff he would speak with Officer O'Neal, and roughly thirty minutes later Officer O'Neal arrived for inspection. (Id. at 14.) When Officer O'Neal arrived, Plaintiff again explained his shoulder condition and advised Officer O'Neal about his medical safety profile and front cuff requirements. (Id.) In response, Officer O'Neal told Plaintiff to "get used to it." (Id. at 15.) When Plaintiff asked why Officer O'Neal had written "do not handcuff in front" on Plaintiff's medical safety profile, Officer O'Neal told him it was because he "was in charge," not Plaintiff. (Id.) Officer O'Neal then sarcastically offered Plaintiff Tylenol for his lingering pains. (Id.) Sometime later Plaintiff was issued a

3

"treatment card" from Dr. Seward instructing Plaintiff was to be handcuffed from the front. (Id. at 16.)

On December 11, 2015, Officers Taylor and Lordge came to Plaintiff's cell to escort him to the showers. After Plaintiff explained he needed to be cuffed from the front, he advised the officers to examine his medical safety profile. (Id. at 18.) Officers Taylor and Lordge read the medical safety instructions and the order from Officer O'Neal and told Plaintiff they were required to handcuff him from the rear. (Id.) After he was handcuffed, Officers Taylor and Lordge escorted Plaintiff to the showers. Plaintiff immediately felt pain in his left shoulder. (Id. at 19.) From December 12-13, 2015, Plaintiff experienced increased levels of pain in his left shoulder, and on December 13, 2015, Plaintiff submitted a sick call request seeking treatment for his shoulder pain. (Id. at 20.)

On December 14, 2015, Officer Poss escorted Plaintiff to the showers but handcuffed Plaintiff from the front. (Id. at 21.) Plaintiff did not experience shoulder discomfort. (Id.) On December 16, 2015, Officer Mason came to Plaintiff's cell and escorted him to the showers. (Id. at 22.) Plaintiff informed Officer Mason of his need to be handcuffed from the front but Officer Mason told Plaintiff he had no choice but to follow Officer O'Neal's orders and handcuff Plaintiff from the back. (Id. at 23.) After Plaintiff showered, Officer Mason reapplied the handcuffs and Plaintiff felt his left shoulder "pop and slip-out of socket." (Id. at 24.) Plaintiff requested emergency medical assistance and was taken to the emergency room at Fairview Park Hospital. (Id. at 25.)

At the Fairview Park Hospital, Plaintiff was admitted to the emergency treatment area, given an IV, and his shoulder was X-rayed, revealing dislocation. (Id.) Plaintiff was

sedated and his left shoulder was relocated and secured in a shoulder immobilizing brace. (Id.) Plaintiff was discharged to the prison the same day and escorted back to his cell. (Id. at 26.) Plaintiff's pain has continued for more than ten months, and the shoulder still continues to cause severe pain and discomfort. (Id. at 28.) Plaintiff is now required to wear a shoulder immobilizer brace at all times except when showering. (Id.)

Plaintiff argues Defendants were deliberately indifferent to an excessive risk of serious harm to his health and safety and were deliberately indifferent to his serious medical needs in violation of his Eighth and Fourteenth Amendment rights. (Id. at 32-36.) Plaintiff also raises two negligence claims against Defendants, for failure to protect and for negligent medical care. (Id. at 37.) Finally, Plaintiff argues Defendants violated his rights under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act. (Id. at 39.) For relief, Plaintiff requests an injunction requiring Defendants to handcuff Plaintiff from the front and make reasonable accommodations for his disability. (Id. at 43.) Plaintiff also seeks compensatory, punitive, and special damages. (Id. at 43-44.)

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds Plaintiff has arguably stated Eighth Amendment claims for deliberate indifference to an excessive risk of serious harm and to a serious medical need against Defendants O'Neal, Poss, Scott, Taylor, Lordge and Mason. See Farmer v. Brennan, 511 U.S. 824, 834-39 (1994); Lane v. Barley, No. 115CV03298TWTJCF, 2015 WL 8488585, at *3 (N.D. Ga. Nov. 16, 2015), report and recommendation adopted sub nom. Lane v. Fraley, No. 1:15-CV-3298-TWT, 2015 WL

5

8492469 (N.D. Ga. Dec. 10, 2015) (finding Plaintiff stated plausible claim under Eighth Amendment when officers ignored "cuff to front" medical profile resulting in injury).

The Court also finds Plaintiff has *arguably* stated viable ADA and Rehabilitation Act claims against Defendant GDOC. See United States v. Georgia, 546 U.S. 151, 158 (2006) (finding inmate's claims against Georgia Department of Corrections under Title II of the ADA abrogated state sovereign immunity, creating private right of action). Title II of the ADA prohibits discrimination in services, programs, or activities of a "public entity" or "discrimination by such entity." 43 U.S.C. § 12132. With the exception of the federal funding requirement under the Rehabilitation Act, claims under the ADA and the Rehabilitation Act are governed by the same standards, and both can be applied to prisons. See Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000); Everett v. Cobb Cnty. Sch. Dist., 138 F.3d 1407, 1409 (11th Cir. 1998); see also Davis v. Georgia Dep't of Corr., No. CV-311-009, 2011 WL 1882441, at *5 (S.D. Ga. Apr. 21, 2011), report and recommendation adopted, No. CV 311-009, 2011 WL 1884193 (S.D. Ga. May 17, 2011) ("Title II of the ADA includes state correctional facilities."); Henderson v. Thomas, 891 F. Supp. 2d 1296, 1308-09 (M.D. Ala. 2012) ("Given that the ADA and Rehabilitation Act apply to prisons, these statutory protections extend to programs and accommodations at [Alabama Department of Corrections] facilities."). In a companion Report and Recommendation, the Court recommends dismissal of Plaintiff's Eighth Amendment claims against Defendant GDOC, Plaintiff's negligence claims, and Plaintiff's ADA and Rehabilitation Act claims against Defendants O'Neal, Poss, Scott, Taylor, Lordge, and Mason.

## II.  INSTRUCTIONS

**IT IS HEREBY ORDERED** that service of process shall be effected on Defendants. The United States Marshal shall mail a copy of the complaint (doc. no. 1) and this Order by first-class mail and request that the defendants waive formal service of the summons.  Fed. R. Civ. P. 4(d).  Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of personal service unless good cause can be shown for failure to return the waiver.  Fed. R. Civ. P. 4(d)(2).  A defendant whose return of the waiver is timely does not have to answer the complaint until sixty days after the date the Marshal mails the request for waiver.  Fed. R. Civ. P. 4(d)(3). However, service must be effected within 90 days of the date of this Order, and the failure to do so may result in the dismissal of any unserved defendant or the entire case.  Fed. R. Civ. P. 4(m). Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate the defendants to effect service.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon the defendants, or upon their defense attorney if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court.  Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendants or their counsel.  Fed. R. Civ. P. 5; Loc. R. 5.1.  Every pleading shall contain a caption setting forth the name of the court, the title of the action, and the file number.  Fed. R. Civ. P. 10(a).  Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by the defendants. Upon being given at least five days notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case. The defendants shall ensure that Plaintiff's deposition and any other depositions in the case are taken within the 140-day discovery period allowed by this Court's Local Rules.

While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case.

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Loc. R. 41.1. If Plaintiff wishes to obtain facts and information about the case from the defendants, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery). Plaintiff should begin discovery promptly and complete it within four months after the filing of the last answer of a defendant named in the complaint screened herein.

Interrogatories are a practical method of discovery for *pro se* litigants. See Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five questions. Id. Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the

Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, he should first contact the attorney for the defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Loc. R. 26.5.

Plaintiff must maintain a set of records for the case. If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Loc. R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

A response to a motion for summary judgment must be filed within twenty-one days after service of the motion. Loc. R. 7.5, 56.1. A failure to respond shall indicate that there is no opposition to the motion. Loc. R. 7.5. Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should a defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine issue as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should a defendant's motion for summary judgment

be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these: any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

Defendants must respond to any outstanding motions on or before the deadline of their first responsive pleading.

SO ORDERED this 17th day of March, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA