IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| WILLIE WATERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 316-076 |
| | ) | |
| GEORGIA DEPARTMENT OF | ) | |
| CORRECTIONS; WESLEY O'NEAL, | ) | |
| Correctional Unit Manager; JOSEPH POSS, | ) | |
| Correctional Officer; JOSEPH SCOTT, | ) | |
| Correctional Officer; ANTONIO TAYLOR, | ) | |
| Correctional Officer; ALEXANDER | ) | |
| TAYLOR, Correctional Officer; | ) | |
| ELLIS LORGE, Correctional Officer; | ) | |
| and JAMES MASON, Correctional Officer, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate incarcerated at Baldwin State Prison ("BSP") in Hardwick, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983 concerning events that occurred at BSP and Johnson State Prison ("JSP") in Wrightsville, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

**I.      SCREENING OF THE AMENDED COMPLAINT**

**A.      BACKGROUND**

Plaintiff names as Defendants: (1) Georgia Department of Corrections ("GDOC"); (2) Wesley O'Neal, Correctional Unit Manager; (3) Correctional Officer Joseph Poss; (4) Correctional Officer Joseph Scott; (5) Correctional Officer Antonio Taylor; (6) Correctional Officer Alexander Taylor; (7) Correctional Officer Ellis Lorge; and (8) Correctional Officer James Mason.  (Doc. no. 80, pp. 1, 4.)  Officers O'Neal, Poss, Scott, Alexander Taylor, Antonio Taylor, Lorge and Mason are being sued in both individual and official capacities.  (Id. at 7-9.)  Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Plaintiff arrived at Johnson State Prison on July 24, 2012.  (Id. at 19.)  Plaintiff suffers from chronic instability of the left shoulder due to tendon and ligament damage, and has a history of recurring anterior dislocations, subluxation, and pains in the left shoulder.  (Id. at 11.)  If Plaintiff is not handcuffed with his hands in front, he risks recurring shoulder dislocations.  (Id. at 11-12.)  On October 27, 2015, Plaintiff was assigned to the Administrative Segregation Unit at JSP for possession of a cell phone.  (Id. at 14.)  On October 28, 2015, Plaintiff informed Sgt. Trenton Ingram about his shoulder injury, and Sgt. Ingram transferred Plaintiff to JSP's medical unit for a health evaluation.  (Id. at 15.)  Dr. James M. Seward evaluated Plaintiff and issued a handcuff profile restriction.  (Id. at 16.)  Dr. Seward informed Sgt. Ingram about Plaintiff's front cuff profile.  (Id.)  Sgt. Ingram documented Plaintiff's front cuff profile on the medical safety profile instructions located

outside Plaintiff's cell.  (Id. at 17.)  On October 29, 2015, Plaintiff's front cuff profile was posted on the GDOC statewide computer database.  (Id. at 18.)  Officers O'Neal, Poss Scott, Alexander Taylor, Antonio Taylor, Lorde, and Mason observed the medical safety profile until December 8, 2015.  (Id. at 22.)

On December 8, 2015, Officer O'Neal examined the medical safety profile instructions posted outside Plaintiff's cell.  (Id. at 19.)  Officer O'Neal told Plaintiff he did not have "a valid front cuff profile," and Plaintiff disagreed.  (Id. at 19.)  Without further discussion, Officer O'Neal marked out the medical safety profile instructions requiring Plaintiff be handcuffed from the front, and wrote "do not handcuff in front."  (Id. at 19-20.)  Officer O'Neal did not attempt to confirm or deny whether Plaintiff had a valid front cuff profile.  (Id. at 21.)

On December 9, 2015, Officers Poss and Scott came to Plaintiff's cell to escort Plaintiff to the showers.  (Id. at 24-25.)  Plaintiff told Officers Poss and Scott about his shoulder condition, advised them about his medical safety profile, and requested to be handcuffed in the front.  (Id.)  Plaintiff told Officers Poss and Scott about Officer O'Neal crossing out the front cuff profile instructions.  (Id. at 26.)  Officers Poss and Scott asked Plaintiff if he had any other medical documentation regarding his front cuff profile.  (Id. at 27-28.)  Plaintiff did not and explained he had not been able to obtain updated medical records.  (Id. at 28.)  Plaintiff asked Officers Poss and Scott to verify his assertions by calling the medical department.  (Id. at 30.)  Officers Poss and Scott examined the medical safety profile instructions, told Plaintiff they were required to follow Officer O'Neal's instructions

3

not to handcuff Plaintiff from the front, and ordered Plaintiff to turn around to be handcuffed. (Id. at 31.) Plaintiff complied and when the handcuffs were applied behind his back, Plaintiff felt pain in his left shoulder. (Id.) Plaintiff told Officers Poss and Scott about his discomfort and pain. (Id. at 32) Officer Poss expressed his sympathy but told Plaintiff they were just following orders. (Id.) After Plaintiff's shower, Officers Poss and Scott handcuffed Plaintiff from the rear again and escorted Plaintiff back to his cell. (Id.)

Officer Poss told Plaintiff he would speak with Officer O'Neal, and roughly thirty minutes later Officer O'Neal arrived for inspection. (Id. at 33.) When Officer O'Neal arrived, Plaintiff again described his shoulder condition, advised Officer O'Neal about his medical safety profile and front cuff requirements, informed him about his pain, and asked him to confirm the restriction with the medical department. (Id. at 34-36.) In response, Officer O'Neal told Plaintiff to "get used to it . . . ." (Id. at 37.) When Plaintiff asked why Officer O'Neal had written "do not handcuff in front" on Plaintiff's medical safety profile, Officer O'Neal told him it was because he "was in charge." (Id. at 37.) Officer O'Neal then sarcastically offered Plaintiff Tylenol for his lingering pains. (Id.) On October 9, 2015, Dr. Seward issued a medical treatment card, called an "offender schedule," instructing officers that Plaintiff was to be handcuffed from the front. (Id. at 16.)

On December 11, 2015, Officers Taylor and Lorge came to Plaintiff's cell to escort him to the showers. (Id. at 39.) After Plaintiff explained he needed to be handcuffed from the front, he told the officers about his medical condition and offered them his offender schedule for examination. (Id. at 40-43.) Officers Taylor and Lordge read the offender

4

schedule and the order from Officer O'Neal on Plaintiff's medical safety instructions and told Plaintiff they were required to handcuff him from the rear. (Id. at 44.) After he was handcuffed, Officers Taylor and Lorge escorted Plaintiff to the showers. (Id. at 45.) Plaintiff immediately felt pain in his left shoulder, which he communicated to the officers. (Id. at 45.) Officers Taylor and Lorge also handcuffed Plaintiff from the rear on the return trip from the showers. (Id. at 45.) Again, Plaintiff experienced pain, which he communicated to the officers. (Id. at 46.) On December 10 and 11, 2015, Plaintiff submitted sick call requests regarding the pain in his shoulder. (Id. at 47.) On December 12 and 13, 2015, Plaintiff experienced increased pain in his left shoulder, and on December 13, 2015, Plaintiff submitted a sick call request seeking treatment for his increasing shoulder pain. (Id. at 47.)

On December 14, 2015, Officer Poss escorted Plaintiff to the showers but handcuffed Plaintiff from the front. (Id. at 48.) Plaintiff did not experience shoulder discomfort. (Id.) Officer Poss indicated he always believed Plaintiff was telling the truth about his medical condition but had to follow Officer O'Neal's orders unless Plaintiff had medical evidence to the contrary. (Id. at 48.) On December 16, 2015, Officer Mason came to Plaintiff's cell and escorted him to the showers. (Id. at 50.) Plaintiff informed Officer Mason of his medical restriction, gave Officer Mason his offender schedule, and asked Officer Mason to confirm the information, if necessary. (Id. at 50-53.) Officer Mason told Plaintiff he had no choice but to follow Officer O'Neal's orders and handcuff Plaintiff from the back. (Id. at 54.) After Plaintiff showered, Officer Mason began handcuffing Plaintiff behind his back, and Plaintiff felt his left shoulder dislocate. (Doc. no. 80-1, pp. 1-2.) Officer Mason finished putting the

handcuffs on Plaintiff and escorted him back to his cell.  (Id. at 2-3.)  Officer Mason contacted Deputy Warden of Care and Treatment Cherie Price, who came to Plaintiff's cell and immediately called for emergency medical assistance.  (Id. at 3.)  Plaintiff was initially taken to JSP's medical unit and was then taken to the emergency room at Fairview Park Hospital.  (Id. at 4.)

At Fairview Park Hospital, Plaintiff was admitted to the emergency treatment area, given an IV, and his shoulder was X-rayed, revealing dislocation.  (Id.)  Plaintiff was sedated and his left shoulder was relocated and secured in a shoulder immobilizing brace.  (Id. at 5.)  Plaintiff was discharged to JSP the same day, seen in JSP's medical unit, and escorted back to his cell.  (Id.)  Plaintiff received follow-up treatment at JSP's medical unit the next day.  (Id.)  Plaintiff has been provided with several medical accommodations for his shoulder, including a shower chair, motorized cold pack therapy unit, foam wedge, and a shoulder sling.  (Id. at 7.)  Plaintiff has been restricted from engaging in sports and has bottom bunk and front cuff profiles.  (Id.)  On August 7, 2017, Plaintiff received a total arthroplasty surgery for his left shoulder.  (Id. at 6.)  Plaintiff's medical impairment prevents him from performing basic work-related activities and "substantial gainful activities."  (Id. at 7.)  Plaintiff continues to experience severe pain and discomfort and undergoes a "painful course of physical therapy treatment."  (Id. at 8.)  Plaintiff is still required to wear a shoulder immobilizing brace.  (Id.)

Between August 10, 2017, and March 2018, Dr. David Ekwunife ordered officials at BSP, where Plaintiff is currently incarcerated, to allow Plaintiff daily showers because of his

shoulder condition.  (Id. at 39.)  However, the officials "repeatedly" disregard the order because Plaintiff does not have a current offender schedule.  (Id.)

Plaintiff argues Defendants "deprived Plaintiff of his constitutionally protected liberty interest" of being handcuffed in front of his body and being free from "the unnecessary and wanton infliction of pain and suffering," in violation of the Fourteenth Amendment.  (Id. at 15-22.) Furthermore, Plaintiff argues Defendants violated his Eighth and Fourteenth Amendment rights by employing an excessive use of force, failing to protect him, and being deliberately indifferent to excessive risk of serious harm to his health and safety and his serious medical needs.  (Id. at 22-31.)  Finally, Plaintiff argues Defendant GDOC violated his rights under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act.  (Id. at 32-37.)  For relief, Plaintiff requests declaratory relief and a preliminary injunction ordering the GDOC and its prison officials to provide Plaintiff with a current offender schedule including his shower profile.  (Id. at 40.)  Plaintiff requests permanent injunctions requiring GDOC and its prison officials to:  (1) provide current offender schedules to all GDOC inmates with "immediate medical needs"; (2) provide written instructions or guidelines for obtaining a current offender schedule; (3) notify all GDOC inmates about the terms of the Court's order; and (4) not impose obligations on inmates that disregard their medical conditions and physical limitations.  (Id. at 40-41.) Plaintiff also seeks compensatory, punitive, and special damages.  (Id. at 41-42.)

### B.     DISCUSSION

#### 1.     Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, of if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 327 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim for relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  An amended complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'"

Id. (quoting Twombly, 550 U.S. at 555, 557).  In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney.  Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007).  However, this liberal construction does not mean that the court has a duty to re-write the amended complaint.  Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff Fails to State Viable Eighth and Fourteenth Amendment Claims Against Defendant GDOC.

In a companion Order, the Court allows Plaintiff to proceed with his ADA and Rehabilitation claims against Defendant GDOC.  However, Plaintiff also attempts Eighth and Fourteenth Amendment claims against Defendant GDOC, and these claims are barred by the Eleventh Amendment.  (Doc. no. 80-1, pp. 15-31.)

"The Eleventh Amendment insulates a state from suit brought by individuals in federal court, unless the state either consents to suit or waives its Eleventh Amendment immunity."  Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)).  Arms or agencies of the state are also immune from suit.  Alabama v. Pugh, 438 U.S. 781, 782 (1978) ("There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit."); Stevens, 864 F.2d at 115 (Eleventh Amendment bars suit against GDC); Bailey v. Silberman, 226 F. App'x

9

922, 924 (11th Cir. 2007) ("Neither a State nor its agencies may be sued as a named defendant in federal court absent the State's consent."); Leonard v. Dep't of Corrs., 232 F. App'x 892, 894 (11th Cir. 2007) ("The Department of Corrections is not amenable to suit because it has immunity under the Eleventh Amendment.").

Because Defendant GDOC has Eleventh Amendment immunity, Plaintiff's Eighth and Fourteenth Amendment claims against it should be dismissed. See C.S. v. Thomas, No. 514CV01022AKKJEO, 2016 WL 2605531, at *4 (N.D. Ala. Apr. 8, 2016), report and recommendation adopted, No. 514CV01022AKKJEO, 2016 WL 1746015 (N.D. Ala. May 3, 2016) (dismissing claims against department of corrections based on Eleventh Amendment immunity, but allowing ADA and Rehabilitation Act claims).

### 3. **Plaintiff Fails to State Official Capacity Claims Against Defendants O'Neal, Poss, Scott, Alexander Taylor, Antonio Taylor, Lorge, and Mason.**

Plaintiff sues Defendants O'Neal, Poss, Scott, Alexander Taylor, Antonio Taylor, Lorge, and Mason "individually and in their official capacities." (Doc. no. 80, p. 7-9.) However, the Eleventh Amendment bars official capacity claims against state prison officials for money damages. Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims for monetary relief fail as a matter of law and should be dismissed.

### 4. **Plaintiff Fails to State a Claim Regarding His Treatment at BSP and Is Not Entitled to Injunctive Relief Based on This Claim.**

To state a claim under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678. Plaintiff has not met this standard

as to his claim officials at BSP allegedly disregarded his shower profile.

Plaintiff has alleged no specific facts as to location, actors, or time period related to his BSP claims. (Doc. no. 80-1, p. 39.) He merely claims "officials at [BSP] have repeatedly disregarded Physician's Orders . . . which requires Plaintiff to be given 'Daily Showers,' to accommodate his shoulder condition." Id. Moreover, Plaintiff has not alleged any named Defendants were involved in the alleged incidents occurring at BSP or attempted to name any officers responsible for the mistreatment at BSP. (Id.) In fact, Plaintiff's allegations regarding his treatment at BSP merely appear to be a one-page afterthought in his 112-page amended complaint. Accordingly, Plaintiff fails to allege sufficient factual content to state a claim regarding his treatment at BSP.

Furthermore, "[a] district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit." Kaimowitz v. Orlando, Fla., 122 F.3d 41, 43 (11th Cir. 1997), *opinion amended on other grounds on reh'g*, 131 F.3d 950 (11th Cir. 1997); see also Bruce v. Reese, 431 F. App'x 805, 806 (11th Cir. 2011) ("[Plaintiff's] request for injunctive relief as to those causes of action was thus properly denied as they were as outside the scope of the underlying suit.") (citations omitted). Because Plaintiff's claim regarding his shower profile is subject to dismissal for failure to state a claims, Plaintiff is not entitled to a preliminary injunction ordering GDOC to provide his with an updated offender schedule. (See doc. no. 80-1, p. 40.)

11

### III.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's Eighth and Fourteenth Amendment claims against Defendant GDOC, official capacity claims against O'Neal, Poss, Scott, Alexander Taylor, Antonio Taylor, Lorge and Mason, and Plaintiff's claims regarding his treatment at BSP be **DISMISSED** for failure to state a claim, and his request for a preliminary injunction be **DENIED**.

SO REPORTED and RECOMMENDED this 26th day of June, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA